IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

TINA L. MCCALLISTER,

      Plaintiff,

v.                            CASE NO. 2:07-cv-00309

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

    This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are cross-briefs in support of judgment on the pleadings.[2]

    Plaintiff, Tina McCallister (hereinafter referred to as

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

[2]  The court reminds the parties that pursuant to Local Rule of Civil Procedure 9.4(a), Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

"Claimant"), filed an application for SSI on March 31, 2005, alleging disability as of March 1, 1992, due to scoliosis, post traumatic stress disorder, adult ADHD, bipolar disorder and manic depressive disorder.  (Tr. at 62-64, 73, 102.)  The claim was denied initially and upon reconsideration.  (Tr. at 31-33, 38-40.) Claimant requested a hearing before an Administrative Law Judge ("ALJ").  The hearing was held on September 14, 2006, before the Honorable James Toschi.  (Tr. at 300-24.)  By decision dated October 27, 2006, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-23.)  On March 23, 2007, the Appeals Council considered additional evidence from the Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 5-8.)  On May 16, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential

2

evaluation" for the adjudication of disability claims.  20 C.F.R. § 416.920 (2006).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. § 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. § 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2006).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has

the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 18.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of spinal disc disorder (discogenic/degenerative) and anxiety/depression.  (Tr. at 18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 18.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 20.)  Claimant has no past relevant work.  (Tr. at 22.)  The ALJ concluded that Claimant could perform jobs such as packager and garment bagger, which exist in significant numbers in the national economy.  (Tr. at 23.)  On this basis, benefits were denied.  (Tr. at 23.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular

4

conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was twenty-four years old at the time of the administrative hearing. (Tr. at 302.) Claimant completed the tenth grade. (Tr. at 303.) Although Claimant worked in the past, most jobs did not last long enough to be considered past relevant work. (Tr. at 315.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes treatment notes from David L. Soulsby,

5

M.D. dated April 8, 1999, through August 6, 1999.  X-rays of the
thoracic and lumbar spine on April 8, 1999, showed thoracolumbar
scoliosis.  (Tr. at 173.)  On May 11, 1999, Claimant described her
pain as a 4 out of 5 at worst and a 2 out of 5 at best.  Claimant
reported no numbness or tingling in the legs.  Upon examination,
Claimant had a half-inch leg length discrepancy.  Claimant had an
obvious scoliosis, right lumbar, left thoracic.  Claimant reported
that she is a smoker.  Dr. Soulsby encouraged Claimant to quit
smoking.  He further indicated that Claimant's scoliosis does not
follow the normal pattern and deserved further evaluation because
of Claimant's complaints of pain.  He ordered a bone scan and
recommended that Claimant try a heel lift.  (Tr. at 169.)  A bone
scan on May 19, 1999, showed abnormal uptake involving the sacrum,
SI joint and iliac wing on the right.  (Tr. at 172.)  On June 3,
1999, Dr. Soulsby noted that Claimant's bone scan showed some
abnormal uptake.  Dr. Soulsby ordered an MRI of Claimant's sacral
area.  Claimant had not yet obtained the heel lift.  Dr. Soulsby
encouraged her to get the heel lift.  (Tr. at 167.)  Dr. Soulsby's
treatment note dated August 6, 1999, reveals that Claimant
cancelled her MRI appointment several times.  (Tr. at 167.)

On December 24, 2004, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that
Claimant had no limitations.  (Tr. at 178-85.)

The record includes a treatment note from Smith & Jones

6

Chiropractic dated February 14, 2005.  (Tr. at 186-92.)

On June 28, 2005, Ahmad M. Maraikayer, M.D. examined Claimant at the request of the State disability determination service.  Dr. Maraikayer diagnosed degenerative disc disease of the cervical spine as per the x-ray from Claimant's chiropractor, thoracolumbar scoliosis, ADHD, depression - bipolar, and "anxiety state."  (Tr. at 196.)

On August 4, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, reduced by an occasional ability to climb, balance, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to extreme cold and vibration.  (Tr. at 199-206.)

On August 9, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had no severe mental impairments.  (Tr. at 208-20.)

The record includes treatment notes from Process Strategies dated February 16, 2005, through November 2, 2005.  (Tr. at 222-42.)  On February 16, 2005, William R. Hall, P.A. completed a Psychosocial Assessment/Intake on which he diagnosed major depressive disorder, recurrent, panic disorder, and rule out ADHD on Axis I and deferred an Axis II diagnosis.  He rated Claimant's GAF at 55, prescribed Lexapro and Klonopin and recommended therapy.  (Tr. at 242.)  On March 3, 2005, Claimant reported an improved

mood, but she was still mildly dysphoric.  Mr. Hall increased
Claimant's Lexapro.  (Tr. at 228-29.)  On June 8, 2005, Claimant
reported an irritable mood, but denied significant depression.
Claimant had minor generalized anxiety.  Claimant planned to start
GED classes.  (Tr. at 224.)  On July 6, 2005, Claimant reported
significant general anxiety and relatively mild panic attacks on a
daily basis.  Claimant's attention and concentration had improved.
(Tr. at 226.)  On November 2, 2005, Claimant reported low energy
and motivation in activities of daily living.  Claimant had
increased worry and forgetfulness.  (Tr. at 222.)

The record includes treatment notes from W. Jarrod Chapman,
M.D. dated November 8, 2005.  Claimant presented to Dr. Chapman
with complaints related to her scoliosis.  Dr. Chapman referred
Claimant for physical therapy and to an orthopedist for treatment
options related to her scoliosis.  (Tr. at 245.)

On December 2, 2005, a State agency medical source completed
a Physical Residual Functional Capacity Assessment and opined that
Claimant had no limitations.  (Tr. at 246-53.)

On December 30, 2005, a State agency medical source completed
a Psychiatric Review Technique form and opined that Claimant had no
severe mental impairments.  (Tr. at 255-69.)

The record includes an additional treatment note from Process
Strategies dated May 23, 2006.  Claimant's diagnosis remained the
same.  Claimant had been absent for six months.  Claimant

8

complained of increased general anxiety and panic episodes, dysphoric moods and increased parenting stressors. (Tr. at 273.)

On August 22, 2006, Tony R. Goudy, Ph.D. evaluated Claimant at the request of her counsel. Claimant's affect was broad. Claimant's speech was spontaneous and coherent. Claimant has a history of suicidal ideation, but reported those thoughts had decreased somewhat. Claimant was well-oriented to time, place, person and circumstance. Claimant's immediate memory, recent memory and remote memory were intact. Claimant was administered the serial threes, rather than the serial sevens because of her history of trouble with math. She made multiple errors and took an inordinate amount of time, which was indicative of a marked impairment in this domain. Dr. Goudy believed that Claimant was functioning in the low average to high borderline range intellectually. Claimant's judgment was moderately impaired. (Tr. at 278.) Dr. Goudy diagnosed major depressive disorder, recurrent and moderate, panic disorder without agoraphobia and rule out ADHD on Axis I and deferred an Axis II diagnosis. He rated Claimant's GAF at 50 to 55. (Tr. at 279.) Dr. Goudy stated that Claimant should be assessed under Listing 12.04 and 12.06, and that she is probably best assessed under Listing 12.04C(2). Dr. Goudy opined that Claimant had mild to moderate impairment in her activities of daily living, moderate to marked impairment in social functioning, a marked impairment in concentration, persistence and pace and no

9

episodes of decompensation. Dr. Goudy felt that Claimant's "emotional condition is so tenuous at this point that the stress of working at a new job would be too much for her to handle." (Tr. at 280.)

Dr. Goudy completed an RFC Mental Impairment Questionnaire on which he opined that Claimant was markedly limited in several areas. (Tr. at 281-83.)

Claimant submitted evidence to the Appeals Council, which included an additional treatment note from Smith & Jones Chiropractic dated February 14, 2005. (Tr. at 284-89.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly assess Claimant's complaints of pain and resulting limitations; (2) the ALJ erroneously discredited the opinions of treating and examining physicians; (3) the ALJ failed in his duty to fully develop the record prior to making his decision; (4) the ALJ erred in his duty to pose a proper hypothetical question; and (5) the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 3-15.)

The Commissioner argues that (1) substantial evidence supports the Commissioner's final decision that Claimant was not disabled; and (2) the ALJ's residual functional capacity finding is supported by substantial evidence. (Def.'s Br. at 6-11.)

10

Claimant first argues that the ALJ failed to properly assess Claimant's complaint of pain and resulting limitations.   In particular, Claimant takes issue with the ALJ's finding that Claimant's subjective complaints of back, neck and shoulder pain were not properly credited.   Claimant further asserts that the ALJ failed to apply the factors set for in Social Security ("SSR") 96-7p and the regulations and made a "conclusory credibility finding" in violation of SSR 96-7p.   (Pl.'s Br. at 4-6.)   In addition, Claimant argues that the ALJ ignored Claimant's psychological limitations.   (Pl.'s Br. at 6.)

A two-step process is used to determine whether a claimant is disabled by pain.   First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged.   20 C.F.R. § 416.929(b) (2006); SSR 96-7p, 1996 WL 374186 (July 2, 1996); see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).   If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated.   Craig, 76 F.3d at 595.   When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence."   Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994).

11

Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 416.929(c)(4) (2006). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3) (2006).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186, at *2. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c).

13

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p, 1996 WL 374186, at *2 ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Craig, 76 F.3d at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

In his decision, the ALJ found that Claimant met the threshold test of showing objective medical evidence that could reasonably be expected to produced the alleged pain and other symptoms. (Tr. at 21.) The ALJ proceeded to the second step of the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity

14

of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects and treatment other than medication. (Tr. at 20-22.)

The ALJ considered Claimant's subjective complaints related to her panic attacks and depression and scoliosis. He noted that when she has a panic attack, it becomes difficult to breathe, she becomes angry and she gets nervous and cries. Claimant cries frequently and without warning. Claimant's scoliosis makes it difficult for her to get up from the floor. She "feels like her back is going to break. She has pains in her arms and hands, her thumb hurts and she gets hand cramps." (Tr. at 20.) The ALJ further observed that Claimant has pain in any position, and cannot walk very far. Claimant cannot take a bath and must take showers sitting on a stool. (Tr. at 21.) Claimant "used to be able to ride bikes and go to the park. She is only able to do this for maybe 15 or 20 minutes and then has to go straight home." (Tr. at 20.)

Regarding medication and side effects, the ALJ further found that Claimant takes Flexeril, a muscle relaxant, on a daily basis and reported that it does not relieve the pain, but just takes the edge off. Claimant also takes Ultracet on a daily basis, and it sometimes relieves the pain. Claimant takes Stratera for ADHD. The ALJ noted Claimant's testimony that these medications cause drowsiness, sweating and nausea. (Tr. at 22.) The ALJ observed that despite Claimant's testimony about medication side effects,

15

"she continues to drive, an activity that may require extended concentration." (Tr. at 22.)

The ALJ found that Claimant failed to maintain consistent treatment for her physical or mental impairments. The ALJ noted that Claimant was treated by a chiropractor once on February 14, 2005, and by Dr. Chapman on November 8, 2005, both after filing her application. (Tr. at 21.) The ALJ went on to find that "[d]espite the fact that she alleges she suffers from chronic, intractable pain, she has not been to a neurosurgeon or a pain management specialist." (Tr. at 21.) Regarding her mental impairments, the ALJ noted that Claimant has a "somewhat longer mental health treatment history. She was treated at Process Strategies on February 16, 2005 and on May 23, 2005. She retu[r]ned on November 2, 2005. The physician noted that the claimant had returned after an absence of more than six months (Exhibit 13F, p. 1)." (Tr. at 21.) The ALJ concluded that Claimant's "failure to maintain a consistent treatment regimen reflects poorly on her credibility." (Tr. at 21.)

The ALJ also observed that Claimant

worked for several months as a telemarketer. She reported that in this job she used phones to make calls to customers, typed and used a computer (Exhibit 9E, p. 3; 8E, p. 1). She indicated that in this job she used machines, tools or equipment; used technical knowledge or skills; and wrote  reports or completed forms (Exhibit 9E, p. 3). Additionally, the claimant has taken the GED test and passed every subject but math (Exhibit 14F, p. 3). [Claimant's] knowledge, skills and abilities mitigate[] against a finding of disability.

16

(Tr. at 21.)

Based on the above findings and upon a consideration of the evidence of record, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. at 22.)

The court proposes that the presiding District Judge find that the ALJ's pain and credibility analysis is consistent with the applicable regulation and SSR 96-7p and is supported by substantial evidence.  Contrary to Claimant's assertions, the ALJ considered Claimant's subjective complaints of pain and other symptoms in keeping with the factors identified in the regulation and in SSR 96-7p.  Indeed, the ALJ's pain analysis, as cited above, touched upon virtually every factor identified in the regulations and SSR 96-7p.  The ALJ did not ignore Claimant's medication side effects. As cited above, he considered them in detail, and his determination that such complaints were not entirely credible is supported by substantial evidence.  The ALJ provided other reasons for discounting Claimant's credibility, all in the context of the factors identified above.  In particular, the ALJ relied on the evidence of record related to Claimant working for several months as a telemarketer and the fact that she had taken the GED and passed every subject except for math.  Also, the ALJ was persuaded

17

in part, by Claimant's failure to maintain consistent treatment for her physical and mental impairments.

The ALJ's ultimate determination that Claimant was not credible is not conclusory.  It was based on a consideration of the factors identified in the regulation and SSR 96-7p, was fully explained and is supported by substantial evidence of record.  The ALJ even considered Claimant's nonsevere complaint of headaches, as he is required to do pursuant to SSR 96-8p, 1996 WL 362207 (July 2, 1996).  In short, the ALJ's pain and credibility analysis was a thoughtful and thorough one supported by substantial evidence of record.

In the context of arguing that the ALJ's pain and credibility analysis is not supported by substantial evidence, Claimant argues that the ALJ failed to pose a proper hypothetical question to the vocational expert.  Claimant essentially asserts that Claimant's subjective complaints should have been accepted and included in a hypothetical question.  (Pl.'s Br. at 7-8.)  Later in her brief, Claimant, citing SSR 83-12 and 96-9p, argues that "[r]eversal or remand is warranted in the instant case to determine the extent to which the ability to perform even sedentary work with a sit/stand option has been eroded by the combination of Ms. McCallister's impairments."  (Pl.'s Br. at 14.)

The ALJ's residual functional capacity finding reduced Claimant to light work, with a sit/stand option, an occasional

18

ability to climb, balance, stoop, kneel, crouch and crawl, a need
to avoid concentrated exposure to extreme cold and vibrations, a
need to understand, remember and carry out simple instructions and
tasks only, occasional contact with the public and co-workers and
a need for unscheduled interruption on an average of two to three
times a week for approximately 30 minutes to an hour due to
psychological reasons. (Tr. at 20.)

The court proposes that the presiding District Judge find that
the ALJ's residual functional capacity finding adequately reflects
Claimant's impairments and resulting limitations, including the
extent to which her subjective complaints are credible. The ALJ's
hypothetical question included those limitations and fairly set out
all of claimant's resulting limitations. See Chrupcala v. Heckler,
829 F.2d 1269, 1276 (3d Cir. 1987) (While questions posed to the
vocational expert must fairly set out all of claimant's
impairments, the questions need only reflect those impairments that
are supported by the record.).

Regarding the sit/stand option in particular, the ALJ's
hypothetical question stated that Claimant's ability to stand and
walk together would be limited to two hours during an eight-hour
day. (Tr. at 316.) The vocational expert testified that of the
three jobs identified, packager, garment bagger and sewing machine
operator, the jobs of packager and garment bagger allow for a
sit/stand option, while the job of sewing machine operator allows

a ten to fifteen minute break every hour.  (Tr. at 320.)

The ALJ did not violate SSR 83-12 or SSR 96-9p.  In fact, in calling a vocational expert, the ALJ complied with the intent of those rulings.  SSR 83-12 states that "[u]nskilled types of jobs are particularly structured so that a person *cannot ordinarily* sit or stand at will.  In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base."  SSR 83-12, 1983 WL 31253, at *4 (1983) (emphasis added).  Similarly, SSR 96-9p, which deals more particularly with sedentary jobs, states that

> [a]n individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically.  Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded.  The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand.  The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 362208, at *34482 (July 2, 1996).

The ALJ called a vocational expert, and the vocational expert testified that Claimant could perform certain light jobs even with the sit/stand limitation described by the ALJ.  As such, Claimant's argument that remand is in order to determine the extent of any erosion on the occupational base because of Claimant's need for a sit/stand option is unconvincing.

Claimant next argues that the ALJ erred in discrediting the opinions of treating and examining physicians. Claimant primarily refers to the ALJ's treatment of Dr. Goudy's opinion, but also makes a brief reference to Dr. Soulsby. (Pl.'s Br. at 8-11.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d) (2006). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 416.927(d)(2).

Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 416.927(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more

21

weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Regarding Dr. Soulsby, Claimant states that Dr. Soulsby "wrote Ms. McCallister stands with a 1/2 inch length leg discrepancy, left longer than right.  There is an obvious scoliosis, right, lumbar, left thoracic.  The lumbar curve is the most significant with tenderness in the area. (Tr. at 169, 173)."  (Pl.'s Br. at 10.) Claimant does not elaborate as to how she believes the ALJ erred in his decision as to Dr. Soulsby's findings.  The ALJ determined that Claimant had a severe spinal disc disorder (discogenic/degenerative), and specifically noted that x-rays taken on April 8, 1999, showed thoracolumbar scoliosis.  (Tr. at 18.) Moreover, the ALJ reduced Claimant's residual functional capacity because of this and other severe impairments.  Dr. Soulsby did not provide an opinion about Claimant's ability to work, and his treatment notes do not otherwise indicate limitations not credited by the ALJ.  If anything, Dr. Soulsby's treatment notes indicate a failure on Claimant's part to follow through with Dr. Soulsby's recommendations that she obtain the heel lift and an MRI.

Turning to Dr. Goudy, Dr. Goudy did express opinions about Claimant's mental impairments and resulting limitations, and the ALJ explained that he had considered his opinions but found them

22

"inconsistent with the weight of the medical evidence of record." (Tr. at 19.)  In particular, the ALJ rejected Dr. Goudy's opinion that Claimant had mild to moderate limitations in activities of daily living, moderate to marked limitation in social functioning, and marked impairment in concentration, persistence and pace. Instead, the ALJ determined that Claimant had mild limitation in activities of daily living, moderate limitation in social functioning, and moderate limitation in concentration, persistence and pace.  (Tr. at 19-20.)

In making these findings about the weight afforded Dr. Goudy's opinion and the limitations in the four areas of functioning, the ALJ relied on the evidence of record from State agency nonexamining medical sources and sources at Process Strategies, where Claimant received some mental health treatment.[3]  In particular, the ALJ noted that a State agency psychologist found that Claimant's daily activities included taking care of her son and pet, going out a couple of times per day, driving, cooking, walking around the block, taking her son to the park and shopping.  Regarding Claimant's social activities, the source also noted that Claimant has friends, but that she has limited social activities due to back pain.  In addition, in treatment notes from Process Strategies, the ALJ noted that Claimant's treating mental health practitioner

---

[3]  As the ALJ noted later in his decision, Claimant was "treated at Process Strategies on February 16, 2005 and on May 23, 2005.  She retu[r]ned on November 2, 2005.  The physician noted that the claimant had returned after an absence of more than six months (Exhibit 13F, p. 1)."  (Tr. at 21.)

indicated Claimant interacted well with others, had direct eye contact, appropriate appearance and affect, no suicidal or homicidal ideation, normal stream of thought, appropriate content of thought and was alert and aware with appropriate cognitive functioning.  In addition, the treating source noted that Claimant "started GED classes on June 10, 2005. He said that she had increased performance and/or social anxiety in this setting which would be situational (temporary) in nature (Exhibit 8F)."  (Tr. at 19.)  The ALJ further noted the opinion of a second State agency medical source that Claimant had mild limitations in activities of daily living, social functioning and concentration, persistence and pace.  (Tr. at 19.)

The court proposes that the presiding District Judge find that the ALJ properly weighed the medical evidence of record, and his findings regarding the weight afforded the opinion of Dr. Goudy are supported by substantial evidence.  The ALJ could have better articulated his reasons for finding Dr. Goudy's opinion inconsistent with the remaining evidence of record.  Nevertheless, a careful review of the decision indicates that the ALJ weighed Dr. Goudy's opinion in keeping with the applicable regulation cited above.  The ALJ's decision makes clear that he found more convincing and reliable, the evidence of record from treating sources at Process Strategies who had an ongoing treatment relationship and whose treatment notes indicate that Claimant did

not maintain consistent mental health treatment, along with the nonexamining State agency sources, who generally opined that Claimant did not suffer from a severe mental impairment.

Claimant argues that the ALJ erred in his duty to develop the record.  Claimant takes issue with the ALJ's finding that "[t]he chiropractor did refer to X-ray reports, but those reports are not in the record.  Therefore, the finding and diagnosis referred to on the X-ray reports are given little weight (Exhibits 4F, p. 5; Exhibit 10F, p. 8)." (Tr. at 18.)  Claimant asserts that the ALJ should have ordered a neurological examination. (Pl.'s Br. at 12.)

In Cook v. Heckler, the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986).  The court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id.  The court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. Id.

Nevertheless, it is Claimant's responsibility to prove to the Commissioner that he or she is disabled.  20 C.F.R. § 416.912(a)

25

(2006).   Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that he or she has an impairment.  Id. § 416.912(c).  In Bowen v. Yuckert, the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings.  It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.  The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . .  If the process ends at step two, the burden of proof never shifts to the Secretary. . . .  It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

    Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994).  Claimant bears the burden of establishing a prima facie entitlement to benefits.  See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  Similarly, he or she "bears the risk of non-persuasion."  Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).

26

The court proposes that the presiding District Judge find that the ALJ did not err in his duty to develop the record.   In treatment notes from Claimant's chiropractor dated February 14, 2005, the chiropractor noted the results from an x-ray report, including degenerative disc disease - C5-C6, C6-C7, C7-T1, compensator curve to left in C-spine, compensatory curvature in left upper T-Spine, and density noted in rib out T-5 and scoliosis. (Tr. at 190.)  The x-ray reports were not included in evidence from the chiropractor.  However, there are other x-ray reports of record dated April 8, 1999, which indicate the presence of thoracolumbar scoliosis. (Tr. at 173.)

Notably, although the ALJ stated that the findings and diagnoses referred to on the x-ray reports were given little weight, the ALJ found that Claimant had a severe spinal disc disorder (discogenic/degenerative), and that Claimant had been diagnosed with degenerative disc disease of the cervical spine and scoliosis.  (Tr. at 18.)

While Claimant indicates the ALJ should have ordered a neurological examination, the court disagrees.  Claimant was represented by counsel throughout the proceedings.  Dr. Maraikayer conducted a physical consultative examination at the request of the State disability determination service and conducted a neurological examination in which he found that Claimant's peripheral pulses were two plus, that Claimant had no ankle edema, digital clubbing

27

or cyanosis and that Claimant's reflexes were two plus. In addition, cranial nerves II through XII were intact and all sensory modalities were intact, including light touch and pinprick. (Tr. at 195.) The evidence of record related to Claimant's scoliosis was adequate and complete and, as such, the ALJ was under no obligation to further develop the record.

Finally, Claimant argues that the ALJ failed to consider the combined effect of Claimant's physical and mental impairments and failed to provide a particularized finding on the effect of Claimant's physical and mental impairments. (Pl.'s Br. at 14-15.)

The court proposes that the presiding District Judge find that the ALJ adequately considered Claimant's impairments alone and in combination in keeping with 20 C.F.R. § 416.923 (2006). The ALJ's decision and the hypothetical question posed by the ALJ at the administrative hearing reflect a careful consideration of all of Claimant's impairments and their combined effect.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b),

Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

  April 30, 2008                     Mary E. Stanley
         Date                        Mary E. Stanley
                                     United States Magistrate Judge